UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL EDWARD HARKE,<br><br>          Plaintiff,<br><br>     v.<br><br>ADA COUNTY SHERIFFS, ADA COUNTY JAIL, DEPUTY LAWSON, DEPUTY WASDAHL #4673, DEPUTY #4241, and ADA COUNTY,<br><br>          Defendants. | Case No. 1:10-cv-00024-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Defendants' *Motion to Dismiss* (Docket No. 24). Defendants argue that they are entitled to qualified immunity and that Harke failed to exhaust his administrative remedies. Further, Defendants contend being named for any claim that took place after Harke was transferred from the Ada County Jail to IDOC is improper and should be dismissed. Specifically, Defendants contend that it is the IDOC rules that prohibited Harke from bringing his bible with when he was transferred, not the county Defendants. Finally, Defendants argue that Harke's request for declaratory and injunctive relief are moot because he is now out of the county's custody.

Following the issuance of the *Initial Review Order* (Docket No. 19), the parties participated in a telephonic triage conference. A settlement conference was scheduled,

**ORDER -1-**

but later vacated. Having reviewed the written arguments of the parties, as well as the record in this case, the Court has determined that oral argument is unnecessary, and therefore enters the following Order.

**Background**

Harke filed the initial complaint in this civil rights case on January 21, 2011, alleging (1) that he was publically humiliated in front of a student tour of the jail, forced to kneel with his legs crossed for twenty minutes, and left in unreasonably cold conditions for eight hours; (2) that his religious diet of soy milk was unconstitutionally suspended as punishment for sharing food with other inmates; and (3) that his Bible was unconstitutionally confiscated, leaving him without a Bible edition that reflects his religious beliefs.

In the Initial Review Order, Plaintiff was permitted to proceed on his Fourteenth Amendment claim as it relates to the alleged incident in October 2008 when the college students toured the jail facility and (2) First Amendment and RLUIPA claims regarding the suspension of his religious diet and Bible confiscation. Plaintiff was not permitted to proceed against the Ada County or Ada County Jail. (Docket No. 6.) On November 30, 2010, Harke filed an amended complaint. At the time of the incidents giving rise to this litigation, Plaintiff resided at the Ada County Jail; thereafter, he was transferred to the Idaho Department of Corrections ("IDOC"), and later released on probation. *See Notice of Change of Address* (Docket No. 38).

Defendants filed a motion to dismiss, or in the alternative summary judgment, on January 28, 2011. (Docket No. 24). Defendants claim qualified immunity with regard to all of Harke's claims. Further, Defendants argue that Harke failed to exhaust his administrative remedies regarding the bible and the holding cell incidents. Defendants further argue that because of his release, Harke's requests for declaratory and injunctive relief are moot.

Federal Rule of Civil Procedure 12(b)(6) specifically gives courts the discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings. *See Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981). On January 28, 2011, Harke was sent such a notice by the Court. *Notice of Summary Judgment Rule* (Docket No. 25). Accordingly, the Court will properly convert Defendant's motion to dismiss to a motion for summary judgment. *See Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

Harke responds to Defendants motion claiming that there are sufficient disputes of fact standing in the way of summary judgment, that Defendants are not entitled to qualified immunity. *Objection to Summary Dismissal* (Docket Nos. 30–31). Harke further argues that Defendants have not met their burden of proving that he failed to exhaust his administrative remedies. Further, with regard to the holding cell incident,

Harke claims that when an unnamed guard told him that filing a grievance "could make your stay rough," he felt threatened with retaliation and opted not to file such a complaint. Harke also requests an indeterminate stay of consideration of defendants motion.

Defendants replied on March 14, 2011, requesting the Court strike portions of Plaintiff's response. Specifically, Defendants ask that the Court strike portions of Harke's Affidavit of Disputed Facts and Amended Complaint arguing that he has not properly asserted that those statements in his affidavit or in his Amended Complaint are based upon his personal knowledge, but instead that they "are true and correct to the best of his ability, belief, and knowledge."

## ANALYSIS

1. **Legal Standard on Summary Judgment**

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct

[the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

3.      **Qualified Immunity**

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity analysis thus consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The qualified immunity inquiry is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994).

As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendants'] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. Without commenting on the constitutional implications of Plaintiff's claims, the Court will consider first whether the second prong of *Saucier* applies, thus granting Defendants qualified

immunity over Harke's complaint. *See Pearson* 555 U.S. at 233 (encouraging lower court judges to exercise their discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.)

As to the second prong, whether the law was clearly established, such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The Court must consider the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (*quoting Wilson v. Layne*, 526 U.S. 603, 614 (1999). If the public official can demonstrate he did not know, nor should he have known the relevant legal standard, then qualified immunity applies. *Harlow*, 457 U.S. at 819.

True to its dual purposes of protecting state actors who act in good faith, and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The conduct at issue here concerns two independent instances, each of which will be examined for the purposes of determining whether the right in question was clearly

established.[1]  If not, Defendants are entitled to qualified immunity and will have summary judgment issued as to that claim.

1. **Student Tour/Holing Cell Incident**

Regarding Harke's excessive force claim (Harke's detainment with the student tour at the jail), Defendants dispute Plaintiff's factual allegations.  Defendants dispute that Harke was made to kneel for an extended period, that he was made to kneel for the tour group to observe him, or that Harke told a deputy that he was in serious pain.  Rather, Defendants contend that only a short time passed before the handcuffs were removed, and that the cell he was being held in was not cold.  Defendants further deny that Harke told an officer that he was cold or that he showed them his hands and feet, which he claims had turned blue.

In spite of these factual differences, Defendants maintain that they are entitled to qualified immunity because, even when taking Plaintiff's version of events as true, Defendants argue that they did not violate any clearly established law.  Instead, Defendants argue that moving Harke to the holding cell, handcuffing him, having him remove his shoes and socks to prevent him from kicking the door, and having him kneel for officer's safety was lawful, reasonable and not a violation of his Fourteenth Amendment rights.  Pointedly, Defendants conclude that it would not be clear to a reasonable officer that doing these acts would be unconstitutional.

---

[1] Plaintiff has withdrawn his religious diet claims.  Amended Complaint, 1-2 (Docket No. 19).

As far as the claims relating to the conditions of confinement in the holding cell, Defendants also dispute Harke's rendition of the facts. Defendants provide evidence that Harke was placed in the "holding cell for 100 minutes and checked on by jail deputies a total of 11 times" *Wasdahl Affidavit*, 2 (Docket No. 24-14). Defendants also provide evidence that the temperature of holding cell, along with the rest of the jail is kept between 65 degrees and 85 degrees. Defendants further allege that Harke has failed to "establish that he suffered serious or significant physical or mental injury." *Memo in Support of Motion to Dismiss*, 11 (Docket No. 24-1). Finally, Defendants assert that Harke's confinement in the holding cell "did not violate clearly established law and officers would not reasonably believe that their actions were unconstitutional," and as such, they should be entitled to qualified immunity on this claim. *Id*. at 12.

To determine whether the rights Harke complains were clearly established, the court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *Id.*

For a constitutional right to be "clearly established," "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right at the time of his conduct." *Eng. v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (*quotations omitted*). "In other words, in light of pre-existing law the

**ORDER -9-**

unlawfulness must be apparent." *Wong v. United States*, 373 F.3d 952, 976 (9th Cir. 2004) (*quotation omitted*). The Court looks first to binding precedent of the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) ("[I]f binding authority indicates that the disputed right existed, even if no case had specifically so declared, the Defendants would be on notice of the right."). Absent binding precedent, "a court should look to whatever decisional law is available to ascertain whether the law is clearly established ..., including decisions of state courts, other circuits, and district courts." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003).

Viewed in the requisite light on summary judgment,[2] the evidence indicates that Defendants could not have been on notice that the actions taken against Harke were clearly unlawful. According to the properly lodged evidence, after identifying Harke as the inmate that was yelling and whistling at a tour group, Deputy Wasdahl moved Harke to a close custody holding cell used to separate an inmate who is acting inappropriately. *Lawson & Waskahl Affidavits* (Docket Nos. 24-4, 24-14). According to the evidence, Harke was given a clothed pat search to check for weapons or other contraband before being placed in the cell. *Id*. To deter inmates from kicking the walls, door, sink or toilet

---

[2] Challenging the credibility of the movant's affidavits is not generally enough to avoid summary judgment. *Anderson*, 477 U.S. at 249. Conversely, summary judgment may not be granted on the basis of statements of fact in the moving party's brief, even if it is uncontroverted by the opposing party. Nor may summary judgment be defeated by factual assertions in the brief of the nonmoving party. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

**ORDER -10-**

of the close custody cell, Harke, like other inmates, was required to remove his shoes and socks before entering. *Id*. The evidence further shows that Harke was only required to kneel for a brief moment, to remove his handcuffs, so he could move around the cell freely. *Id*. The evidence also shows that the holding cell, like the rest of the jail, is kept between 65 and 85 degrees Fahrenheit, in accordance with the Idaho Law Standards. *Stoltenberg Affidavit* (Docket No. 24-12).

Additionally, in contravention to Harke's complaint, Defendants have shown that Harke was only placed in the holding cell for 100 minutes, and checked on a total of eleven times. Defendants further submit the observations of the deputies that continually checked on Harke, noting that none of them reported him to be in distress. CITE Wasdahl Aff (8:40 p.m. "ok sitting on toilet," 8:55 p.m. "standing in cell," 9:04 and 9:24 p.m. "sitting in corner," 9:23 p.m. "standing in corner-breathing," 9:26 p.m. "standing at door/ok," 9:29 p.m. "standing-pacing-breathing," 9:46 p.m. "Ok. Given evening meds," 10:00 p.m. "standing at AT door," and at 10:06 "sitting in corner-okay."). Harke was removed from the holding cell at 10:10 p.m. *Wasdahl Affidavit*, 2-3.

Harke "opposes all statements made in the affidavit of Deputy Wasdahl," and "stands firm in his statement of facts located in his verified amended claim." *Plaintiff's Objection to Summary Judgment*, 5 (Docket No. 32). Further, Harke claims that after being placed in the holding cell, he became "disoriented and freighted that the officers were going to make him disappear," apparently by "murder[ing] and secretly dispos[ing]"

**ORDER** -11-

of his body. *Id*. While obviously contradicting the facts as alleged by Defendant, Harke has not offered any explanation for the disparity in facts; instead, he has simply reasserted that he suffered serious injury as a result Defendants actions. While his allegations are the hallmark of an § 1983 action, the issue here is whether Harke has proffered sufficient evidence to meet his burden of opposing summary judgment. *See Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 959 (9th Cir. 1994).

"Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence sufficient to support a jury verdict in her favor." *Id*. (internal quotation omitted). In this instance, Defendants have fully demonstrated, in support of summary judgment, that Harke was properly detained, supervised and held, in accordance with Constitutional requirements. Harke was therefore required to oppose the summary judgment by going beyond the pleadings and showing "by . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file,' that a genuine issue of material fact exists." *Id*. (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Harke failed to meet this burden of controverting Defendants' submission with any evidence that would create a genuine issue of material fact requiring a jury's determination.

Accordingly, Defendants will be granted summary judgment on this claim.

2. **Bible Confiscation**

Defendants argue that "[i]t is not clearly established law that taking away a Bible

because an inmate violated jail rules[3] . . . violates that inmate's constitutional rights or statutory rights." Memo in Support, 4 (Docket No. 24-1). According to Defendants, Harke's bible was taken away from him because it was found in possession of another inmate, in violation of the jail rule against sharing items. Defendants state further that, when it was confiscated, Harke's bible was placed with the rest of his personal effects.

Later, according to Defendants, because of the nature of Harke's conviction, he was transferred to IDOC. Defendants provide evidence that Harke was not allowed to bring his personal bible with him upon transfer. *See Stoltenberg Affidavit* (Docket No. 24-12). Then, according to Defendants, Harke executed an Inmate Small Property Release form authorizing the release of his personal property, including "books & magazines" to Merrie Neely. Defendants contend the County honored Harke's request.

Defendants, maintain that there is no clearly established law that prohibits confiscation of a Bible, or that the county defendants violated any law in following the IDOC rule that prohibits books, magazines, newspapers and other publications to be provided to inmates except directly from a legitimate publisher or other legitimate business source. *See* IDAPA 06.01.01.402.01(a).

Harke admits that he freely shared his bible with other inmates. However, he argues that the taking of his bible was punitive in nature, especially considering that his sharing often condoned by other guards. Harke further disputes Defendants' position that

---

[3] It is undisputed that Harke shared his bible with other inmates.

**ORDER -13-**

it was IDOC policy to prohibit transfer or delivery of books already in an inmates possession.

The First Amendment free exercise of religion clause absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296 (1940). Inmates clearly retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Taking all of Harke's allegations as true, the Court finds that confiscation of the bible was *de minimis*, and is therefore not actionable. *De minimis* burdens on the free exercise of religion are not of a constitutional dimension. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 (7th Cir. 1999) (the unavailability of a non-pork tray for Plaintiff at 3 meals out of 810 does not constitute more than a *de minimis* burden on his free exercise of religion).

Because of the *de minimus* nature of the harm, and because of the legitimate penological interest against allowing inmates to share items, it cannot be said that the law was clear on this issue. Thus, summary judgment must issue because of Defendants' qualified immunity. *Harlow*, 457 U.S. at 819 ("Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences.").

Thus, the court will dismiss these claims, along with Harke's Amended Complaint.

## ORDER

It is hereby **ORDERED:**

1. Defendants' Motion to Dismiss (Docket No. 24) is GRANTED;

2. Plaintiff's Motion for Telephonic Status Conference (Docket No. 22) is DENIED;

3. Plaintiff's Motion for Extension of Time (Docket No. 23) is DENIED;

4. Plaintiff's Request for Counsel (Docket No. 30) is DENIED;

5. Plaintiffs Objection to Summary Judgement (Docket No. 32) is DENIED;

6. Defendants' Motion to Strike (Docket No. 35) is DENIED as MOOT; and

7. Plaintiff's Amended Complaint (Docket No. 19) is DISMISSED.

DATED: **August 22, 2011**.

Honorable Larry M. Boyle
United States Magistrate Judge